HIPP, Plaintiff in error, v. STATE, Defendant in error.

*No. 75-677-CR. Argued January 6, 1977.—*
*Decided February 15, 1977.*
(Also reported in 250 N. W. 2d 299.)

For the plaintiff in error the cause was argued by *Ronald L. Brandt,* deputy state public defender, with

whom on the brief was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C. J. The single issue is whether Hipp was denied a right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution and Art. I, sec. 7 of the Wisconsin Constitution.

On October 6, 1971, defendant Hipp and another man accosted a young girl, K.K., age sixteen, in Milwaukee. They forced her into their car and eventually drove to Dodge county and into a field in a rural area. While there Hipp forced her to commit an act of sexual perversion and raped her. The girl was later released in Madison.

Hipp was arrested in Iowa on October 7, 1971. On October 8, 1971, a criminal complaint was issued charging Hipp with rape, contrary to sec. 944.01, Stats., and sexual perversion, contrary to sec. 944.17. He also faced criminal charges in other jurisdictions, namely, Illinois, Ohio and Wisconsin. All requested extradition. Hipp was served with the Wisconsin complaint and warrant but waived extradition to Illinois where, on or about December 1, 1971, he was convicted of unlawul use of a weapon and was sentenced to four to five years in the Statesville prison in Illinois.

On December 13, 1971, Illinois authorities informed the Dodge county sheriff that Hipp was sentenced to the Illinois state prison but that he faced additional charges in Illinois. On December 27, 1971, the Dodge county sheriff sent a detainer warrant to the Kankakee County Illinois Sheriff, but for unknown reasons the detainer was not forwarded to the Statesville prison. On June 21, 1973, after a period of sixteen months, a de-

tainer was filed at the prison. Hipp was returned to Wisconsin on July 30, 1973.

After Hipp's return to Wisconsin an additional period of almost eight months transpired before trial. The significant procedural events during this period are as follows: July 31, 1973, Hipp was brought before the county court. An attorney was appointed and the parties stipulated to extend the time for a preliminary examination not to exceed sixty days. On September 27, 1973, the preliminary examination was held and Hipp was bound over to circuit court for trial. October 15, 1973—the information (dropping the sexual perversion charge but alleging kidnapping and rape) was filed; the arraignment held; defendant pled not guilty. October 19th—there was a substitution of attorneys at defendant's request. November 5, 1973—defendant filed a pro se petition for habeas corpus on grounds of denial of a right to speedy trial. The trial court examined petition and ordered it heard upon appropriate motions by defense counsel. November 6, 1973—trial date set for November 9th. November 9, 1973—defendant was given ten days to file a proper petition on the speedy trial issue. November 19, 1973—the defendant was committed to Central State Hospital for observation because of a bizarre disturbance he caused at the county jail. December 10, 1973—defendant returned to county jail. January 17, 1974—defendant ordered to file any motions within ten days. January 29, 1974—defendant requested trial be delayed for additional motions and filed a new petition for habeas corpus. February 14, 1974—trial court denied defendant's motion. March 26, 1974—trial before jury commenced.

The test for determining whether there has been a deprivation of the right to speedy trial was set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). The rationale

of *Barker* was followed in *Day v. State*, 61 Wis.2d 236, 212 N.W.2d 489 (1973).[1] The four factors considered in these cases in deciding whether the right to a speedy trial has been denied are: (1) Length of the delay; (2) the reason for the delay; (3) assertion of the right to a speedy trial; and (4) the prejudice to the defendant.

Our first inquiry is the length of the delay. It is only when the delay is such that it presumptively prejudiced the defendant that the balancing of the factors becomes necessary.[2]

The complaint and warrant against Hipp were issued October 8, 1971. The state contends that because he was not arrested until July 30, 1973, the time did not commence to run until that day. In support of its contention the state cites *United States v. Marion*, 404 U.S. 307 (1971), where a three-year delay between the offense and the filing of an indictment was excluded by the court in its speedy trial analysis. Several years ago this court in *State ex rel. Fredenberg v. Byrne*, 20 Wis.2d 504, 508, 123 N.W.2d 305, 307 (1963), stated "the right to a speedy trial arises with the initial step of the criminal prosecution, *i.e.*, the complaint and warrant." This position was recently affirmed in *State v. Ziegenhagen*, 73 Wis.2d 656, 664, 245 N.W.2d 656, 660 (1976). Therefore, the state's contention must be rejected; the right to speedy trial arises when the defendant is officially accused.[3] In *Marion* the defendant was not the accused

---

[1] *Also see Hadley v. State*, 66 Wis.2d 350, 225 N.W.2d 461 (1975); *Norwood v. State*, 74 Wis.2d 343, 246 N.W.2d 801 (1976); *Beckett v. State*, 73 Wis.2d 345, 243 N.W.2d 472 (1976); *State v. Ziegenhagen*, 73 Wis.2d 656, 245 N.W.2d 656 (1976).

[2] *State v. Ziegenhagen* and *Norwood v. State, supra*, n. 1.

[3] *United States v. Joyce*, 499 F.2d 9, 19 (7th Cir 1974), *cert. denied*, 419 U.S. 1031. *But see People v. Williams*, 66 Mich. App.

until the time of the indictment. Hipp was accused when the complaint and warrant were issued.

"[T]he threshold inquiry in speedy trial cases must always concern the length of delay." *Norwood v. State,* 74 Wis.2d 343, 353, 246 N.W.2d 801, 807 (1976). While all four factors set out in *Barker* must be balanced, this court "will not inquire into the contention that there has been a lack of speedy trial where there is no evidence of excessive delay." *Ziegenhagen, supra* at 665, 245 N.W. 2d at 660. Unless the delay " ' ". . . is presumptively prejudicial, there is no necessity for inquiry into the other factors. . . ." ' " *Beckett v. State,* 73 Wis.2d 345, 348, 243 N.W.2d 472, 474 (1976), quoting *Barker v. Wingo, supra* at 530.

Hipp was charged by complaint on October 8, 1971, and went to trial on March 26, 1974. The delay from time of charging to trial was almost thirty months. Thirty months is presumptively prejudicial and necessitates an examination of the other factors for a determination of whether right to speedy trial has been denied.

In examining the reasons for delay we can divide the time into significantly different periods. Hipp was arrested in Iowa on October 8, 1971, on a charge unrelated to his Wisconsin offense. He chose to waive extradition to Illinois where he was tried and convicted of unlawful use of a weapon, rather than return to Wisconsin. He was sentenced on December 1, 1971. This delay of almost two months cannot be attributed to the state. It could not bring Hipp to trial while he was awaiting trial in Illinois.[4] When a defendant is held for trial in an-

521, 528, 239 N.W.2d 653, 657 (1976) (speedy trial guarantees do not attach until formal arrest.)

[4] *Foster v. State,* 70 Wis.2d 12, 18, 233 N.W.2d 411, 414 (1975).

other jurisdiction, delay prior to availability is not to be counted in determining whether the defendant has been deprived of the right to speedy trial.[5] Thus the two-month period between issuance of the complaint and warrant in Wisconsin and the conviction in Illinois cannot be counted.

Shortly after Hipp's Illinois conviction Wisconsin authorities sent a detainer to Illinois authorities, but the detainer was not forwarded to the Illinois prison at Statesville. Nearly eighteen months later, in June of 1973, the Wisconsin authorities filed a detainer at the Statesville prison. The state concedes that this delay was due to its negligence. The state knew the defendant was incarcerated at Statesville, therefore had a duty to determine when a defendant incarcerated elsewhere is available for trial and once available the state must act to bring about a speedy trial.[6] The state argues that because this was not an attempt to delay the trial in order to hamper the defense it should be weighed less heavily against the state than intentional delay in determining whether Hipp was denied his right to speedy trial. While the state has the duty of assuring any defendant a speedy trial,[7] it is correct in asserting that negligent delay should be weighed less heavily, when balancing the reasons for delay, than intentional delay.[8]

Hipp was returned to Wisconsin on July 30, 1973. The two-month period from the filing of the detainer at Statesville until his return to Wisconsin was necessary and reasonable to accomplish his extradition. This peri-

[5] *Prince v. State of Alabama,* 507 F.2d 693, 701–02 (5th Cir. 1975), *cert. denied,* 423 U.S. 876.

[6] *Smith v. Hooey,* 393 U.S. 374 (1969); *United States v. Canty,* 469 F.2d 114, 118 (D.C. Cir. 1972).

[7] *Hadley v. State,* 66 Wis.2d 350, 363, 225 N.W.2d 461, 466 (1975).

[8] *State v. Ziegenhagen,* 73 Wis.2d 656, 667, 245 N.W.2d 656, 661 (1976).

od likewise cannot be weighed heavily in determining the reason for delay.

The final period of time is between his return to Wisconsin on July 30, 1973 and his trial on March 26, 1974, a period of eight months. The chronology of procedural events that transpired and the reason therefor are set forth above and will not be repeated here. A considerable portion of this delay is attributable to the defendant. The remainder of this period was reasonable and necessary for the orderly disposition of the case in a busy court.

We conclude the only unreasonable delay in the thirty-month period between the complaint and the trial was the eighteen months after the Illinois conviction and the filing of the detainer at the prison in Statesville. We realize he was outside the jurisdiction of this state and that a detainer had been sent to Illinois but those facts do not excuse the failure to take further steps to secure the defendant's return.

The next *Barker* factor to be considered is whether the defendant made a demand for a speedy trial. As recently as 1972, Wisconsin held that a failure to demand a speedy trial precluded dismissal of charges on the ground that the defendant was denied the right to speedy trial. *State v. Kwitek,* 53 Wis.2d 563, 570, 193 N.W.2d 682, 686 (1972). While the demand waiver rule was repudiated in *Day v. State, supra,* the failure to demand a speedy trial must be considered. Hipp did not demand a speedy trial until November of 1973. The failure to make a demand is weighed against a defendant as evidence that he was consciously avoiding trial.[9] However, there are situations where the failure to make a demand is not to be weighed against the defendant. Examples of these situations were given by the Supreme Court in *Barker, supra* at 536. One such example was where a

---

[9] *Id.* at 669, 245 N.W.2d at 662.

defendant was represented by incompetent counsel. If failure to make a demand is weighed less heavily when a defendant is represented by incompetent counsel, it should also be weighed less heavily when a defendant is unrepresented by counsel. Presumably, while Hipp was incarcerated in Illinois and the Wisconsin charges were dormant, he was unrepresented. He contends that he was not consciously avoiding trial but was relying on statements of an Illinois law enforcement officer that the Wisconsin charges had been dismissed. It is undisputed that he was originally aware of the charges and his reliance on the alleged statement of an Illinois guard that the Wisconsin charges must have been dismissed is questionable.

Considering all the circumstances surrounding Hipp's failure to make a demand, including his lack of counsel, his failure should not be weighed heavily against him in determining whether his right to speedy trial was denied.

The fourth factor is prejudice to the defendant. "[P]rejudice should be identified in the light of at least three interests that the speedy-trial provisions of the constitution were designed to protect: Prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of a defense." *Ziegenhagen, supra* at 671, 245 N.W.2d at 663.

Evaluating these three factors, prejudice to the defendant was minimal. Because he was already in jail, the delay did not result in Hipp's pretrial incarceration. Hipp believed the charges had been dropped. Only after he became aware of the charges in June of 1973 could there be anxiety about the pending charges. Hipp was not able to call witnesses at the trial, but this was because he did not attempt to contact the witnesses until he asked for delay at the time of trial. The only witness he sought who might have aided his defense was his co-

defendant. Hipp hoped to show that the victim was not coerced, but Hipp and his attorney believed his case would be harmed by calling the co-defendant. Other witnesses would have testified concerning his character. It was not the delay which prevented these witnesses from testifying but Hipp's choice to wait until trial to call them. This strategic error was probably the result of Hipp's refusal to be represented by counsel. When he did have counsel he could not agree with them on how the case should be presented and finally insisted on representing himself.

This court has recognized another type of prejudice. "[E]ven though a defendant is otherwise detained, the failure to have a pending charge brought to trial completely eliminates the possibility that concurrent sentences could be imposed."[10] Conceivably Hipp was prejudiced to some extent in this respect. Prior to and at the time of trial he was being credited on his Illinois sentence. After his sentence here, he was serving his Illinois and the two Wisconsin sentences concurrently. Basic, of course, to the consideration of concurrent sentences is the total time a defendant must serve. This was not a situation where the defendant was required to completely serve one sentence and then commence another. We are further aware that sentences imposed in Wisconsin were not severe and, in fact, lenient in view of the nature of the offenses and the defendant's conduct in connection with them. A review of the record reveals his conduct was extreme, terrifying to his victim and offensive to the public. It is highly probable that had the defendant been brought to trial at an earlier date a more severe sentence would have been imposed in Wisconsin.

In balancing the *Barker* factors we conclude the defendant Hipp has not been denied a recognizable right

[10] *Hadley v. State, supra* at 364–365, 225 N.W.2d at 467. *Accord, Smith v. Hooey, supra* at 378.

to a speedy trial. The delay between the accusation and the trial was thirty months. Only the eighteen months after the Illinois conviction to extradition to Wisconsin can be classified as unreasonable or unnecessary. The eighteen months are unreasonable and the law enforcement authorities are to be criticized for it. However, in balancing this delay with the other factors it does not sufficiently tip the scales to warrant a holding that the defendant was denied a right to a speedy trial and the resultant drastic remedy of dismissal of the serious charges involved herein.

*By the Court.*—Judgment and order affirmed.