STATE of Wisconsin, Plaintiff-Respondent,†

v.

Kevin D. JENNINGS, Defendant-Appellant.

Court of Appeals

*No. 01–0507–CR. Submitted on briefs November 6, 2001.—*
*Decided December 18, 2001.*

2002 WI App 16

(Also reported in 640 N.W.2d 165.)

† Petition to review granted 3-19-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Stephen M. Compton, S.C.*, Delavan.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *Sandra L. Tarver*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J.   Kevin D. Jennings appeals from a judgment of conviction after he pled no contest to one count of third-degree sexual assault, contrary to Wis. Stat. § 940.225(3) (1999–2000).[1] He also appeals from an order denying his postconviction motion. Jennings claims that the trial court erred when it failed to vacate the judgment despite the fact that the trial court never attained personal jurisdiction over him. Because the statute of limitations expired on the felony charge filed against him and personal jurisdiction over Jennings was not secured, we reverse.

## I. BACKGROUND

¶ 2.   This appeal has its genesis in a sexual assault that occurred on December 5, 1992. At 11:30 p.m., an unknown male accosted the victim, M.K., as she was

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

entering her residence. He led her to the back of the residence and, against her will, forced her to engage in penis-to-vagina intercourse. Soon after, M.K. reported the incident and was taken to the Sexual Assault Treatment Center, where vaginal swabs were taken from her.

¶ 3. On November 7, 1994, Jennings was incarcerated at Dodge Correctional Institution on an unrelated charge. Buccal swabs were taken from Jennings by prison personnel. The DNA sample that was taken from Jennings was placed on the DNA Data Bank system on July 28, 1997. On December 1, 1998, a forensic scientist determined that the DNA sample given by Jennings matched the foreign profile from the vaginal swab of M.K.

¶ 4. On December 3, 1998, Milwaukee police detectives questioned Jennings at the Columbia Correctional Institution. On December 4, 1998, the Milwaukee County District Attorney's office issued a criminal complaint alleging that on December 5, 1992, Jennings had committed second-degree sexual assault by having sexual intercourse with M.K., without her consent by use of force. On the same date, the district attorney's office obtained an order directing the superintendent to produce Jennings from the Columbia Correctional facility where he was serving a sentence for an unrelated prior conviction. The order required releasing Jennings to the custody of the Milwaukee County Sheriff for transportation and attendance at an initial appearance.

¶ 5. On December 6, 1998, Jennings made his initial appearance before a court commissioner and waived his right to a preliminary examination. On December 14, 1998, the district attorney's office filed a criminal information alleging one count of second-degree sexual assault. Jennings moved to dismiss the

141

charge, based on the expiration of the six-year statute of limitations. The trial court denied the motion. The district attorney filed an amended information changing the charge to third-degree sexual assault, after which Jennings entered a no contest plea. At the same time, Jennings reserved the right to challenge the personal jurisdiction of the trial court.

¶ 6. After sentencing, Jennings moved for post-conviction relief challenging the judgment of conviction and the sentence asserting lack of personal jurisdiction by the trial court because the statute of limitations had expired. The motion was denied and Jennings now appeals.

## II. ANALYSIS

¶ 7. Jennings contends that the trial court should have dismissed his conviction because the court failed to attain personal jurisdiction over him as a result of the State's failure to timely commence its criminal prosecution before the expiration of the six-year statute of limitations, WIS. STAT. § 939.74(1).

¶ 8. The State responds that when it filed a complaint and obtained the issuance of an order to produce within the limitation period, it timely commenced the prosecution. As a basis for its position, the State argues that when WIS. STAT. § 939.74(1) is read in conjunction with other statutes which provide that a prosecution is commenced by the filing of a complaint, § 939.74(1) is ambiguous. It claims, however, that the relevant statutes involved can be harmonized by implication. To not do so, reasons the State, would defeat the purpose of § 939.74(1). The State further suggests that it would be proper for us to conclude that a complaint and an

142

order to produce are sufficient to commence a prosecution under the circumstances where the accused is in custody at the time. We are not convinced.

¶ 9.  As germane to the disposition of this appeal, WIS. STAT. § 939.74 reads in pertinent part:

> **(1)** [P]rosecution for a felony must be commenced within 6 years. . . . Within the meaning of this section, a prosecution has commenced when a warrant or summons is issued, an indictment is found, or an information is filed.
>
> . . . .
>
> **(3)** In computing the time limited by this section, the time . . . during which a prosecution against the actor for the same act was pending shall not be included. A prosecution is pending when a warrant or a summons has been issued, an indictment has been found, or an information has been filed.

¶ 10.  The other relevant statutes proposed by the State that allegedly create the ambiguity are WIS. STAT. §§ 967.05(1) and 968.02(2). Section 967.05(1) is included in chapter 967 denominated "CRIMINAL PROCEDUREGENERAL PROVISIONS." As relevant to the State's argument it reads: "A prosecution may be commenced by the filing of: (a) A complaint."

¶ 11.  WISCONSIN STAT. § 968.02(2) is contained in a chapter entitled "COMMENCEMENT OF CRIMINAL PROCEEDINGS." As relevant to the State's argument, it reads: "After a complaint has been issued, it shall be filed with a judge and either a warrant or summons shall be issued or the complaint shall be dismissed, pursuant to s. 968.03. Such filing commences the action." WISCONSIN STAT. § 967.05(1) was enacted in 1979 by chapter 291. Section 968.02(2) was enacted in 1977

by chapter 449. WISCONSIN STAT. § 939.74 preceded both of these statutes by its enactment in 1955 in chapter 696, entitled "RIGHTS OF THE ACCUSED: Time limitations on prosecutions."

¶ 12. Whether or not a statute is ambiguous is a question of law which we decide independently. *State v. Denter*, 121 Wis. 2d 118, 122, 357 N.W.2d 555 (1984). A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses. *Id.* at 123. Ambiguity, in the meaning of a statute, can be created by the interaction of separate statutes, as well as by the interaction of the words and structure of a single statute. *F.P.R. v. J.M.*, 137 Wis. 2d 375, 386, 404 N.W.2d 530 (1987).

¶ 13. WISCONSIN STAT. § 939.74(1) makes no mention of the filing of a complaint in determining the commencement of a criminal prosecution. Yet, as pointed out by the State, both WIS. STAT. § 967.05(1) and WIS. STAT. § 968.02(2) provide that the filing of a criminal complaint commences a prosecution. We agree with the State that the language in these other two statutes referencing the criminal complaint renders § 939.74 ambiguous. Clearly, there is a conflict in the language, but this conclusion does not complete our analysis.

¶ 14. "Where statutes on the same subject conflict or are inconsistent, this court must make every effort to harmonize them in order to give effect to the purpose of each statute." *City of Milwaukee v. Kilgore*, 185 Wis. 2d 499, 513, 517 N.W.2d 689 (Ct. App. 1994), *aff'd,* 193 Wis. 2d 168, 532 N.W.2d 690 (1995). In harmonizing conflicting statutes, however attractive the exercise of implying the existence of missing language may be, we are

144

chary to engage in judicial legislation, if our method of harmonizing does not defeat the purpose of the statute under analysis. *State ex rel. Reynolds v. Smith*, 22 Wis. 2d 516, 521, 126 N.W.2d 215 (1964). The State seeks to harmonize the statutes by arguments of implication and equivalency. We now examine this suggested methodology.

¶ 15.  The State reasons that just as a formal accusation commences a criminal prosecution for the purposes of the right to a speedy trial, so also should a formal accusation commence a criminal prosecution for statute of limitation purposes. This argument is based upon the rhetorical principle of comparison. This form of argumentation is subject to many potential infirmities. An argument by comparison is only as valid as the comparison is valid. Furthermore, this form of argument may fail because it proves too much. We now examine the objects of comparison proposed and conclude that the comparison fails.

¶ 16.  Although the right to a speedy trial post-accusation and a statute of limitation on pre-accusation time share a common purpose against delay, any further similarities are not forthcoming. Instead, dissimilarities are readily evident. There is a significant difference between the nature of a right to a speedy trial and time restrictions placed upon a prosecution for a felony. The former has constitutional origins while the latter is a creature of legislative policy. The right to a speedy trial is "amorphous" in nature whose enforcement is determined by the application of a formula "relative and wholly dependent on the facts of the particular case." *State v. Lemay*, 155 Wis. 2d 202, 212, 455 N.W.2d 233 (1990) (referring to the *Barko v. Wingo*, 407 U.S. 514 (1972), factors). Whereas, the limitation placed upon felony prosecutions is statutory, direct, categorical and

precise. In exacting terms, WIS. STAT. § 939.74 sets forth how and when a person formally becomes an accused. *State v. Pohlhammer*, 78 Wis. 2d 516, 521, 254 N.W.2d 478 (1977).

¶ 17. In *Lemay*, the supreme court ruled that the sixth amendment speedy trial provision applies "once the putative defendant in some way formally becomes the accused." *Id.*, 155 Wis. 2d at 209. In reaching its decision, the supreme court cited *State ex rel. Fredenberg v. Byrne*, 20 Wis. 2d 504, 508, 123 N.W.2d 305 (1963); *State v. Ziegenhagen*, 73 Wis. 2d 656, 664, 245 N.W.2d 656 (1976); and *Hipp v. State*, 75 Wis. 2d 621, 625, 250 N.W.2d 299 (1977). Significantly, our supreme court concluded that each case stood for the proposition that the right to a speedy trial did not attach until the issuance of a complaint and a warrant, a necessary two-step process. *Lemay*, 155 Wis. 2d at 209–10. Attachment does not occur until the two-step process has been completed. Subsumed in the State's argument is the weight it appears to give and the implication derived therefrom, to a portion of a sentence in the *Fredenberg* decision: "For the purpose of a speedy trial, *the complaint, which is 'a written statement of the essential facts constituting the offense charged . . .' sec. 954.02 (1), Stats., commences a criminal prosecution* and the warrant of arrest is based upon it." *Fredenberg*, 20 Wis. 2d at 508 (emphasis added). No such implication is mentioned or even suggested in either *Ziegenhagen, Hipp,* or *Lemay*, all of which followed *Fredenberg* in time. Nor should such implication be drawn from *Fredenberg* because such reasoning flies in the face of an express statement in the same decision that: "We are inclined to construe our constitution to mean the right to a speedy trial arises with the initial step of the criminal prosecution, *i.e.,* the complaint and warrant." *Id.*, 20

Wis. 2d at 508. Thus, the two-step process is the criteria required to be fulfilled for a person to be formally accused for the right to a speedy trial to attach. To somehow reasonably imply that any process short of the issuance of both the complaint with a warrant or a summons satisfies the purpose of the statute has no basis in the case law of this state. Contrary to the State's expectations, the argument from comparison supports, rather than defeats, Jennings's position.

¶ 18. The State asserts that Jennings was formally accused and the prosecution commenced with the timely filing of the complaint and the issuance of an order to produce. It argues that an order to produce is sufficiently like a warrant or a summons to commence a prosecution where, as here, Jennings was in the custody of a state correctional facility when the order to produce was issued. Thus, it contends that an order to produce is the equivalent of an arrest warrant which meets the requirement of the statute. Again, we are not convinced.

¶ 19. We note, as is evident from a review of the record, that Jennings was incarcerated at the Columbia Correctional facility for a completely different crime at the time the present sexual assault charge was filed. Thus, his contemporaneous incarceration was not due to any pending sexual assault charge. Milwaukee County detectives questioned Jennings on December 3, 1998.[2] They did not serve him with a summons or an arrest warrant. After questioning him, they left, leaving him at Columbia. The complaint was filed by the State the next day, December 4, 1998, and the order to produce was obtained on the same date.

---

[2] *Cf.* WIS. STAT. § 939.74(3) (providing the tolling provisions).

147

¶ 20. WISCONSIN STAT. § 939.74(1) is quite precise as to which documents must be issued, found or filed to commence a felony prosecution; i.e., a warrant, summons, indictment or information. No mention is made of a complaint or an order to produce. An order to produce can be used in so many contexts for so many purposes, both civil and criminal, it does not reasonably follow that it is the equivalent to an arrest warrant or, for that matter, a summons. The State knew where Jennings was housed. Under WIS. STAT. § 968.04(2)(a),[3] the State could have quite readily complied with the calls of § 939.74 by issuing a summons (or a warrant), with the order to produce. No reason appears in the record why this simple scheme was not followed. Nor can we divine any statutory or case law authority to support the State's theory of equivalency. There still, however, remains the question of how to reasonably harmonize the statutes.

¶ 21. In the hierarchy of statutory construction, is the well-recognized rubric that when a general statute conflicts with a specific statute, the specific statute prevails. *State ex rel. S.M.O. v. Resheske*, 110 Wis. 2d 447, 453, 329 N.W.2d 275 (Ct. App. 1982). This is so even when the specific statute was enacted before the later-enacted general statute unless the context of the later- enacted statute indicates otherwise. The basis for this formulation is that the legislature, knowing of the specific statute, and not expressly amending it or re-

---

[3] WISCONSIN STAT. § 968.04(2)(a) provides:

SUMMONS. (a) In any case the district attorney, after the issuance of a complaint, may issue a summons in lieu of requesting the issuance of a warrant. The complaint shall then be filed with the clerk.

pealing it, intended it to continue as a qualification to the general statute. *State v. Dairyland Power Coop.*, 52 Wis. 2d 45, 49–53, 187 N.W.2d 878 (1971).

¶ 22. As set forth earlier in this opinion, Wɪs. Sᴛᴀᴛ. § 939.74 is a very specific statute enacted twenty years before either Wɪs. Sᴛᴀᴛ. §§ 967.05(1) or 968.02(2). Section 967.05(1), a part of a Chapter described as "CRIMINAL PROCEDURE □ GENERAL PROVI-SIONS," in permissive terms, sets forth how a criminal prosecution "may" be commenced. Section 968.02(2) only facially conflicts with § 939.74 in that by its very terms, unless subsequent to the issuance of a complaint, a summons or a warrant is issued, the complaint shall be dismissed. Thus, § 968.02(2) expressly contemplates the fulfillment of the two-step process in order for a criminal prosecution to commence. In contrast, § 939.74(1) specifically deals with the time limitation in which a prosecution for a felony or misdemeanor must be commenced. It also specifically defines how an action is to be commenced within the meaning of the statute of limitations. Doubtless, it is more specific than either § 967.05(1) or § 968.02(2). There is no language contained in either statute that either amends or repeals § 939.74(1). Therefore, harmony among these statutes is created by concluding that the very precise requirements for the proper commencement of a criminal prosecution for a felony set forth in § 939.74(1) requires it to trump § 967.05(1) and § 968.02(2) in determining what events are necessary to commence the running of the six-year statute of limitations.

## III. CONCLUSION

¶ 23. Thus, although we conclude that Wɪs. Sᴛᴀᴛ. § 939.74(1) is ambiguous when read together with

149

Wis. Stat. §§ 967.05(1) and 968.02(2), which refer to the complaint as a document sufficient to commence a prosecution, we resolve the ambiguity in favor of Jennings. Although we regret that such procedural violations result in freedom of a potentially guilty person, we are bound by the language of the statutes enacted by our legislature, and the rules governing their construction.

¶ 24. Here, Wis. Stat. § 939.74(1) is the more specific statute, and must control over the more general and permissive language of Wis. Stat. §§ 967.05(1) and 968.02(2). Section 939.74(1) does not permit the action to commence by the filing of a complaint and an order to produce. Rather, it specifically requires that a warrant or a summons be issued, an indictment be found, or an information be filed. The district attorney failed to comply with the dictates of this statute within six years of the crime.

¶ 25. Moreover, we are not persuaded by the State's arguments that the order to produce is the functional equivalent of a warrant. Neither the language of the statute, its construction nor the case law, support the State's contention. Further, the State's comparison between the statute of limitations and the speedy trial right cannot be sustained. The two-step process of complaint, followed by a warrant or a summons, has long been followed in this State under both principles. If a complaint, followed by an order to produce, is deemed sufficient to commence an action for purposes of the statute of limitations, that change needs to be made by the legislature, not by this court.

¶ 26. Accordingly, we must reverse the judgment and order and dismiss this case. The action was not timely commenced and, therefore, the trial court did not attain personal jurisdiction over Jennings.

150

*By the Court.*—Judgment and order reversed.